**LINEAS AEREAS del CARIBE, S.A., Petitioner,**

**v.**

**DEPARTMENT OF TRANSPORTA- TION, Federal Aviation Administration, Respondents,**

Aeromar Hush Kit Corporation, et al., Intervenors.

**AEROMAR HUSH KIT CORPORATION, and Aeromar, C. Por A., Petitioners,**

**v.**

**DEPARTMENT OF TRANSPORTA- TION, Federal Aviation Administration, Respondents,**

Trans Global Airlines, Inc., Intervenor.

**AEROVIAS COLUMBIANS LTDA., Petitioner,**

**v.**

**DEPARTMENT OF TRANSPORTA- TION, Federal Aviation Administration, Respondents.**

Nos. 85–1387, 85–1548 and 85–1806.

United States Court of Appeals, District of Columbia Circuit.

Argued April 16, 1986.

Decided June 3, 1986.

Joanne W. Young, New York City, for petitioner, Lineas Aereas del Caribe, S.A. in No. 85–1387.

Robert M. Hausman, Washington, D.C., for petitioner, Aeromar Hush Kit Corp. in No. 85–1548 and intervenor in No. 85–1387.

William B. Lazarus, Atty., Dept. of Justice, with whom James S. Dillman, Atty., F.A.A. and Anne S. Almy, Atty., Dept. of Justice, were on brief, for respondents in Nos. 85–1387, 85–1548 and 85–1806. Maria A. Iizuka, Atty., Dept. of Justice, Washington, D.C., also entered an appearance, for respondents in No. 85–1387.

Howard G. Feldman, Washington, D.C., entered an appearance, for petitioner, Aerovias Columbians Ltda., in No. 85–1806.

George U. Carneal and John C. Keeney, Jr., Washington, D.C., were on brief, for amicus curiae, Noise Limited, urging reversal.

Before WALD, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

The Federal Aviation Administration (FAA) establishes and enforces the maximum permissible noise levels for civil aircraft operating to and from United States airports. The FAA also grants exemptions from these regulations in the public interest. In *Airmark Corp. v. FAA*, 758 F.2d 685 (D.C.Cir.1985), this court upheld the FAA's broad discretion to grant exemptions to carriers who do not comply with its noise regulations. We found in the orders under review, however, that the agency had "utterly failed to provide a consistent approach that would allow even a guess as to what the decisional criteria are or should be." *Id.* at 695. The case was therefore remanded to the FAA to develop consistent principles that would govern its treatment of air carriers' petitions for exemptions.

After this court decided *Airmark*, the petitioner in Case No. 85–1387, Lineas Aereas del Caribe, S.A. (LAC), applied to the FAA for an exemption. In its order granting LAC a limited exemption, the agency applied new principles and announced that they would also govern its consideration of future exemption requests. The FAA later used these principles in its order granting a limited exemption to Aeromar, C. por A., one of the co-petitioners in Case No. 85–1548. The issue now presented to us is whether the agency's treatment of these exemption requests demonstrates the reasoned decision-making that was found lacking in *Airmark*. We find that the FAA's

exemption criteria reasonably and even-handedly implement the agency's noise regulations and the Aviation Safety and Noise Abatement Act of 1979. We therefore affirm the orders at issue in these consolidated cases.

### I. BACKGROUND

#### A. *FAA's Statutory Mandate to Regulate Aircraft Noise*

In 1968 Congress conferred broad authority upon the FAA to regulate aircraft noise. *See* Pub.L. No. 90–411, 82 Stat. 395 (1968), *codified at* 49 U.S.C. § 1431 (1982). Acting under this mandate, the FAA adopted deadlines for compliance that required carriers to reduce aircraft noise in phases. *See Airmark*, 758 F.2d at 687 & n. 3. In the first phase of its noise regulations, the FAA imposed noise ceilings on transport aircraft for which the maker sought an original type certification. 34 Fed.Reg. 18,355 (1969). Since the Boeing 707 and the McDonnell-Douglas DC–8 aircraft had already been type certificated at the time, these noise rules did not initially apply to them. In 1973, the FAA amended 14 C.F.R. Part 36 to impose noise standards on all transport aircraft produced after 1973, regardless of when they had received their original type certification. 38 Fed. Reg. 29,569 (1973). In 1976, the FAA amended Part 36 again to apply noise controls to all four-engine aircraft currently in use. 41 Fed.Reg. 56,046 (1976).

In addition, the FAA imposed more stringent noise standards for new aircraft designs. All aircraft for which applications for type certification were made after November 5, 1975 are required to meet the lowest noise levels which have become technologically practicable. *See Airmark*, 758 F.2d at 687 n. 3.

While the agency was phasing in its noise regulations for domestic carriers, Congress enacted the Aviation Safety and Noise Abatement Act, Pub.L. No. 96–193, 94 Stat. 50 (1979), *codified at* 49 U.S.C. §§ 2101–08, 2121–24 (1982) (ASNAA). Congress directed the FAA to apply the January 1, 1985 compliance deadline for domestic carriers to foreign aircraft operating in the United States unless the International Civil Aviation Organization (ICAO) established substantially compatible noise standards by January 1, 1980. 49 U.S.C. § 2122 (1982). ICAO did not take the necessary action, and the FAA therefore amended Part 36 to cover all foreign aircraft operating in the United States. 45 Fed.Reg. 79,302 (1980).

As of 1980, therefore, the FAA had ruled that, after January 1, 1985, its noise criteria would be applicable to all civilian subsonic turbojet aircraft, including those which had received type certification by 1969. The agency's regulations prohibited carriers from operating any non-complying aircraft at any U.S. airport after January 1, 1985. *See* 14 C.F.R. § 91.303 (1985). Thus, carriers operating non-complying aircraft faced two decisions as 1985 approached. They first had to decide whether to continue operations in the United States beyond January 1, 1985. If they elected to continue, they then confronted the decision of how to comply with the noise criteria of Part 36. The carriers had three choices: they could replace their non-complying aircraft with complying aircraft, they could re-engine non-complying aircraft with newer, more technologically advanced, and therefore quieter engines, or they could retrofit the engine nacelles and fan ducts of their non-complying aircraft with sound-absorbing materials known as "hush kits." *Airmark*, 758 F.2d at 688. Installing hush kits is the least costly of these alternatives.

Faced with these stringent new rules, some smaller aircraft operators chose to pursue the hush kit alternative. Because the hush kits were not immediately available, these carriers filed exemption requests with the FAA to enable them to operate their non-complying aircraft pending installation of hush kits. The FAA has general authority to issue exemptions "in the public interest." 49 U.S.C. § 1421(c). Congress has encouraged the FAA to consider granting exemptions from its noise control compliance deadline in certain cases of hardship for the affected carrier. The

Conference Committee report accompanying ASNAA states:

> [T]he FAA is urged to give consideration to hardship situations involving smaller carriers where the carrier is making a good faith compliance effort but needed technology is either delayed or unavailable and rigid adherence to compliance deadlines could work financial havoc and deprive the public of valuable airline service.

H.R.Rep. 96–715, 96th Cong., 1st Sess. 23 (1979).

The FAA identified from this language the five criteria that should be applied to evaluate petitions for exemptions from the 1985 compliance deadline. The agency stated that the criteria were: 1) the carrier's small size; 2) the unavailability of technology for noise abatement; 3) the carrier's demonstrated good faith effort to comply with the noise rules; 4) the financial havoc the carrier would suffer if the regulation were strictly enforced; and 5) the loss of valuable air service if an exemption were not granted. 45 Fed.Reg. 79,312 (1980).

A flood of exemption requests from small carriers followed. *See Airmark*, 758 F.2d at 688. Aircraft operators unhappy with the FAA's rulings on their exemption applications appealed to this court. In *Airmark*, this court held that the FAA's exercise of its exemption authority in the cases under review was arbitrary and capricious because of the agency's failure to apply consistent criteria. *Id.* at 687. *Airmark* charged the agency on remand with developing a coherent and evenhanded program for granting exemptions from its noise regulations. We now conclude that the agency has satisfied the terms of our mandate and of Congress' directives.

### B. *LAC's Petition for Review*

LAC is a charter air carrier designated by the government of Colombia to operate charter cargo service between Colombia and the United States. The carrier operates one DC–8–54F aircraft in flights between Bogota, Colombia and Miami, Florida. LAC petitioned the FAA in April 1985 for an exemption from the FAA's noise regulations after January 1, 1985. 14 C.F.R. Part 36 & § 91.303 (1985). The agency granted the exemption, authorizing LAC to operate one DC–8–54F aircraft until December 31, 1985. *See In the Matter of the Petition of Lineas Aereas del Caribe, S.A.*, FAA Docket No. 24028–2 (Apr. 26, 1985) (*LAC*). In this exemption decision, the FAA promulgated information to guide other petitioners for exemptions.

The FAA announced that petitioners who satisfy all five of the criteria set forth by Congress in the ASNAA Conference Report would be eligible for exemptions. In explaining these criteria, the FAA interpreted "good faith compliance effort" to require that a petitioner have entered into a firm contract by March 29, 1985 (the date of the *Airmark* decision) for the installation of hush kits or for the acquisition of complying replacement aircraft, supported in either case by a non-refundable deposit of at least $75,000 for each aircraft, and that the delivery date be at the earliest possible time. If the contract were for a hush kit, the FAA required that it be with a supplier that had applied, before January 1, 1985, for a supplemental type certificate (STC) from the FAA for the hush kits and that was continuing active efforts to obtain the certificate. LAC met this test of good faith compliance efforts through its hush kit contract with Snow Aviation International, Inc. on January 16, 1985.

The FAA also provided a way to continue the exemption if the initial supplier failed to obtain an STC by September 30, 1985. The carrier could retain its exemption by entering into a substitute contract with a supplier who had obtained an STC by September 30, 1985 if the contract were supported by a non-refundable deposit of at least $75,000 and specified the earliest possible delivery date. *LAC* at 5. Finally, the FAA stated that exemptions would not be extended beyond the end of 1985 except in cases in which the exemption-holder had a firm hush kit delivery position in 1986 from

a supplier who obtained an STC by September 30, 1985. *Id.* at 6.

Applying these rules to LAC, the agency granted the carrier an exemption from its noise regulations through December 31, 1985. The FAA also ruled that if Snow Aviation failed to receive its STC by September 30, LAC's exemption would remain in effect for sixty days after that date. During that sixty-day period, if LAC obtained a firm substitute contract, supported by a non-refundable deposit of at least $75,-000, for installation of hush kits by a supplier who had obtained an STC by September 30, then the carrier's exemption would remain in effect until its aircraft was fitted with the hush kits. *Id.* at 7. Neither Snow nor any other supplier of hush kits for DC–8–54F aircraft obtained an STC by September 30, 1985. LAC's exemption from the noise regulations has therefore lapsed.

### C. *Aeromar's Petition for Review*

Aeromar, C. por A. is an all-cargo air carrier based in the Dominican Republic. The airline operates flights between the Dominican Republic and Miami. Aeromar, C. por A. entered into hush kit modification contracts with Snow Aviation on December 31, 1984 and with Aeromar Hush Kit Corporation on March 25, 1985. Applying the *LAC* exemption criteria, the FAA granted the carrier an exemption to operate four DC–8–54F's until December 31, 1985. The exemption remained valid only while the carrier retained the delivery positions assigned to it by Snow Aviation and Aeromar Hush Kit, respectively. *In the Matter of the Petition of Aeromar, C. por A.*, FAA Docket No. 24346–1 (Oct. 24, 1985). Aeromar, C. por A., along with Aeromar Hush Kit and Trans Global Airlines, Inc. (collectively, "Aeromar") challenge the FAA's scheme for exemptions and also raise a procedural objection to the agency's announcement of generally applicable guidelines in *LAC.*

### II. The Rationality of the FFA's September 30, 1985 Deadline for Hush Kit Certification

■ The FAA's complicated scheme of conditions precedent and conditions subsequent for obtaining, maintaining, and losing exemptions is the focus of these appeals. LAC asserts that the FAA's deadline of September 30, 1985 for supplier certification treats operators of DC–8–50 series aircraft unfairly because no supplier of hush kits for this type of aircraft received certification by that date. We reject this contention. As this court held in *Airmark*, ASNAA does not compel the FAA to grant exemptions from the noise regulations "merely because hush kits are currently commercially unavailable." 758 F.2d at 691.

■ LAC also protests that it was arbitrarily denied an extension of its exemption beyond the end of 1985. LAC's complaint is basically that the carrier cannot be certain that its exemption will be extended, no matter what contracts it enters or what other action it takes. This lament does not present a valid claim for relief because of two serious flaws. First, LAC erroneously assumes that it is absolutely entitled to continue non-complying flights beyond the end of 1985. Both the Conference Report in ASNAA and this court's decision in *Airmark* make clear that no carrier in LAC's position has this right. In addition, LAC mistakenly assumes that it is entitled to seek an exemption by arranging for hush kits rather than for the use of complying aircraft or for the installation of quieter engines in its existing aircraft. LAC has no such right to elect the least expensive route to full compliance. *See Airmark*, 758 F.2d at 690 (FAA need not grant individual exemptions based upon particular carrier's inability to comply with regulations without suffering economic harm); 14 C.F.R. § 91.303 (1985).

■ LAC also challenges as unreasonable the FAA's requirement that it must have a firm contract with a hush kit supplier who obtained an STC by September 30, 1985 in order to continue its flights beyond the end of 1985. We find that the September 30 deadline was reasonable. To satisfy the regulations, the carrier was required to demonstrate a reasonable expectation that

its hush kit manufacturer would be able to install a hush kit during 1985. The agency rationally concluded, based on its detailed knowledge of every aspect of civil aircraft design, manufacture, testing, operation, and maintenance, that September 30 was the last date on which a hush-kit supplier could obtain an STC and still be able to deliver the hush kits to non-complying aircraft during 1985. As the FAA noted, its choice of the September 30 deadline was "necessary to ensure there be a serious likelihood that the non-noise compliant aircraft can be brought into compliance in a reasonable time-frame." *LAC* at 3. This justification provides sufficient basis for the September 30 deadline.

■ LAC argues, in addition, that the agency's choice of deadline discriminated against operators of DC–8–50 series aircraft, such as LAC, and favored operators of DC–8–60 and B–707–300 series aircraft for which duly certificated hush kit suppliers were available. Carriers operating the DC–8–60 and B–707–300 aircraft had a way to avoid shutting down flight operations even if their original supplier were not certificated by September 30, 1985; they could still have contracted with another certificated supplier by November 30, 1985 in order to obtain extensions of their exemptions. Operators of DC–8–50 series aircraft, however, had no certificated hush kit supplier to turn to as September 30, 1985 approached.

LAC maintains that the dissimilar treatment of carriers depending on whether certificated hush kit suppliers were available for their type of aircraft is arbitrary. We disagree. Treating them differently was justified because they were differently situated with respect to the object of regulation. That object was to ensure that any carrier granted an exemption to operate noncomplying aircraft have a reasonable expectation of hush kit installation before the end of 1985. Carriers who have contracted with certificated suppliers were simply in a different position during 1985 than carriers who had made no such arrangements. The former carriers, as the

FAA held, could reasonably anticipate that they would obtain hush kit delivery positions for their aircraft by December 31, 1985. The FAA also determined that carriers operating aircraft for which no certificated hush kit suppliers were available by September 30, 1985 had no such expectation. Viewing the situation from the supplier's standpoint, the agency noted that September 30 was the latest date in calendar year 1985 by which a hush kit supplier could expect to obtain its STC and "still have a reasonable expectation of being able to install production hush kits within that year." *LAC* at 5. We decline to disturb the FAA's judgment on this point. The agency is well-versed in the intricacies of the lead times between a supplier's certification of its hush kit design and the installation of production versions of that hush kit in non-complying aircraft.

We emphasize that LAC has already enjoyed an exemption from the noise criteria for calendar year 1985. A paramount objective of ASNAA was to bring all carriers operating in the United States into compliance with the FAA's noise regulations by the *beginning* of 1985. As the FAA observed, "[t]he clear Congressional intent of ASNA[A] was to place a policy premium on the expeditious delivery of improved noise technology to the market." *Id.* at 3. Recognizing this, yet also seeking to grant appropriate exemptions in the public interest, the FAA granted a limited exemption which allowed LAC to operate non-complying flights throughout 1985. The agency can scarcely be faulted for fashioning a rational deadline which has the effect of denying LAC further leniency into 1986.

The court in *Airmark* specifically declined to prescribe particular exemption criteria for the FAA. 758 F.2d at 695. We reiterate this point here. We express no view on how the FAA should proceed in the case of a carrier who enters a hush kit contract with a supplier who in turn obtained an STC *after* September 30, 1985, but before December 31, 1986, when all exemptions end.

## III. Aeromar's Claims

■ We have considered LAC's other arguments, and find them wholly unpersuasive. We also find Aeromar's claims without merit. We need add only that Aeromar relies on a thoroughly misguided interpretation of our precedents in challenging the FAA's use of an adjudication to promulgate a general rule. Aeromar inexplicably argues that the FAA's use of the *LAC* decision to announce its general exemption criteria for non-complying foreign carriers must be struck down, asserting that an agency may not promulgate rules in an administrative proceeding. It is well-established, however, that an agency may proceed in precisely this way; the FAA flies by the book when it develops and applies a policy in an adjudicatory proceeding and announces that it will also apply the policy prospectively. *See Airmark*, 758 F.2d at 692 n. 25; *see also NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974) (NLRB may announce new principles in adjudicative proceeding); *SEC v. Chenery Corp.*, 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947) (agency in adjudicative proceeding need not resort to rulemaking to announce a general standard it has formulated and applied for first time in that proceeding); *Capitol Technical Service, Inc. v. FAA & DOT*, 791 F.2d 964, at 971 n. 46 (D.C.Cir.1986) (FAA has discretion to announce exemption criteria by adjudication).

## IV. Conclusion

The FAA has computed and logged a rational flight plan to reach its congressionally mandated destination of limiting aircraft noise while granting exemptions in the public interest. After reviewing the FAA's plan, we reject petitioners' challenges to the agency's requirement that a carrier seeking an exemption to operate non-complying aircraft after January 1, 1986 must contract with a supplier certificated by September 30, 1985 for the installation of hush kits on its aircraft. The agency's rules and timetables for carriers to obtain and preserve exemptions from the otherwise generally applicable noise rules were reasonably constructed to bring all carriers operating in the United States into full compliance with the noise regulations as soon after January 1, 1985 as possible.

Because the FAA's exemption criteria are eminently sensible, we also deny LAC's request for a stay of the FAA's aircraft noise regulations. 14 C.F.R. § 91.303 (1985). The FAA orders at issue in these cases are

*Affirmed.*